CHAUDRON v. HUNT and NORRIS.

</div>

1. An action at law may be maintained on a note payable to order which is lost, where it does not appear to have been negotiated or indorsed.
2. And on such note, where the declaration avers its execution, its contents and its loss, and that it is still due the plaintiff, it is sufficient. It need not aver that it was not indorsed when lost, nor whether lost before or after due.

HUNT and NORRIS, copartners, declared in assumpsit in Marengo Circuit Court, against Ed. Chaudron, alleging that the defendant had executed his promissory note on the 4th of June, 1825, promising to pay to the plaintiffs or order, $155 71, on the 1st of January, 1826, and averred that the note "was lost by misfortune, as appears by the affidavit here produced and shewn to the Court." At the time of the issuance of the writ, an affidavit was filed, in which one of the plaintiffs swore that the plaintiffs owned the note, and that by some misfortune it was lost by

them. The affidavit did not show if the note was lost before or after due, nor if indorsed or not, when lost; nor did the declaration. The defendant filed a general demurrer to the declaration, and at October term, 1827, at the trial of the cause, the Court overruled the demurrer, and gave judgment for the plaintiffs.

The decision of the Court on the demurrer is the error assigned.

STEWART, for the appellant. The ground of the demurrer is, that the declaration does not show a right in the plaintiffs to maintain an action at law. The statute of 1828, authorizing actions at law on lost notes, is not applicable and cannot aid the appellees, as it was passed after this case was decided. How then stands the law independently of this statute. It must be remarked that the plaintiffs below have omitted to state whether the note was lost before due or after due, and also, if it was indorsed or not indorsed when lost. It is a maxim in pleading, that every thing shall be taken most strongly against the party pleading, *a* as the pleading is presumed to show his case in the strongest and most favorable aspect it will bear, the presumption is, that the facts of his case in those respects, are against him, and we are authorized to assume such to be the case. Again, a plaintiff must show affirmatively that he has a good cause of action; it is not sufficient if from his showing it be left doubtful. Another rule is, that in pleading, a fact must come from the party who is presumed to have the best opportunity to know it, and if exclusively within his knowledge, he must state and prove it. These facts are then exclusively within the knowledge of the plaintiffs, and are very material, for the law of the case turns upon them. No action at law will lie to recover the amount of a note lost before it falls due, if it be negotiable. *b* If the note was indorsed in blank, which is usual among merchants, that was equivalent to a transfer to bearer; *c* and where a note is lost which is transferable by delivery, or where made payable to order, and indorsed in blank, which is the same thing, any *bona fide* holder can recover on it. *d* On proof merely of the loss of a note. no recovery can be had on it in any case; the loser is entitled to a recovery only on the condition of indemnifying the maker against loss; *e* and where it was previously indorsed in blank, even on tendering a bond of indemnity, an action at law cannot be supported, *f* because courts of

*a* 1 Chitty's Plead. 241.

*b* Chitty on Bills 156. 154 note. 4 Taunton 602.
*c* Chit. on bills 135; and note 175.
*d* Chitty on bills 147, 148, 154; and note. 2 Camp. 381.
*e* Chitty on bills 378, 154 and note.
*f* Chitty on bills 152–3. 3 Camp. 324.

law cannot receive or require such a bond. [a] They are not properly constituted for that purpose. It is only in a Court of Chancery where proper indemnity can be stipulated for, and it is only in that Court that a recovery can be had on a lost note transferable by delivery, or indorsed in blank. There, the rights of all parties can be secured. [b] If a loss is to be sustained by any one, it must be borne by the loser, on the principle, that he who is most in fault must suffer. An innocent holder cannot be defeated, nor should the maker be compelled to pay twice. Courts of Equity only can guard against these evils, and secure the application of these principles. [c]

LYON, contra. It is insisted that the remedy on a lost instrument is in Chancery, and not at law. This question has been settled in favor of the appellees. [d] The cases which have not permitted a recovery at law upon negotiable paper which was merely lost and not destroyed, were those in which the paper had been indorsed before it was lost. [e]

Where the existence, loss and contents of the note are proved, and it does not appear that the note has been negotiated, the remedy is at law. The demurrer admits these facts. The plaintiffs allege in their declaration the existence, loss and contents of the note, and aver that it is due and unpaid. This would negative the idea that the note had been negotiated; for if it was lost, and due to the plaintiffs, as the demurrer admits, it could not have been negotiated. If a recovery in the present case would indemnify Chaudron against a subsequent recovery on the same note in the hands of an innocent holder, the action is certainly well brought, for the only object in requiring a resort to Chancery is, that the defendant may be guarded against a second liability on the same instrument. Under our statute, Chaudron would have been entitled to the benefit of all payments or discounts which might have existed or accrued against the note at any time before he received notice of its transfer. If then, he had paid the note to the plaintiffs, he might have protected himself against a second payment, for want of notice. If he had been notified that the note had been transferred, at any time before judgment was rendered against him, he might have defeated the plaintiffs action by disproving the allegation of the loss of the note. When the judgment was rendered, the note became merged in it, and its legal effect was de-

JULY 1830.

Chaudron
v.
Hunt and
Norris.

[a] Chitty on bills 155.
[b] Chitty on Bills 152, and note. 2 Camp. 211.
[c] Chitty on bills 150, note.
[d] Chitty on bills 154—5. Pintard vs. Tackington 10 Johns. R. 104. Note to Angel v. Fenton, 8 Johns. Rep. 115. 3 Yates 442.
[e] Pierson vs. Hutchinson 2 Camp 211; and note, and the cases cited in 6 Ves. 812. Reed v. Brookman 3 Term Rep. 151.

5

JULY 1830.

Chaudron
v.
Hunt and
Norris.

stroyed, so that no recovery could be had on it, if found subsequent to the rendition of the judgment.

It is contended that the declaration should aver that the paper had not been negotiated. I repeat, that the allegation that it was due to the plaintiffs, and was lost, would negative this idea. If the averment had been expressly made, it would require the plaintiffs to prove a negative, which can never be required, because it cannot be proved. If true, this matter should be shewn by way of defence by the defendant, and the proof should come from him. Whether the note was lost before or after due, is immaterial in this case, for it was not negotiable unless indorsed.

The declaration is regular, and an affidavit of the loss of the note accompanies the writ, pursuant to the requisition of the act of 1823.

STEWART, in conclusion. The act of 1823, has nothing to do with this question. The position does not appear to be denied that if the note was indorsed in blank, the action cannot be maintained; but it is said we must shew in defence that it was indorsed. This is a fact solely within the power and knowledge of the plaintiffs, and if it be necessary to enable the plaintiffs to succeed that it appear that the note was lost without indorsement, certainly they must shew that fact as well as every other one material. A party is never bound to plead and prove that which he does not know, and cannot be presumed to know. Such construction must always be given, and such rules adopted as will tend to prevent frauds and protect parties from injury. The plaintiffs should be held to a strict shewing; they bring at best a claim of a suspicious nature, and subject to great abuse. It is said we can suffer no loss or injury, and therefore have no good grounds to resist the recovery. It would not be difficult to present several cases, notwithstanding our statute of set-off, in which we might be seriously injured. It must be borne in mind that the note is not destroyed, it is merely lost, it is in existence. It is not denied that if indorsed, particularly before due, any subsequent innocent holder has a good right to the contents. Now suppose it be found by some one and carried to New York or elsewhere, and transferred from hand to hand, that property of the defendant be found there, and that by process of foreign attachment this property be there seized; of what avail would be our statute of set-off or notice. Perhaps the defendant when

sued here, might not be informed that it had been in fact already recovered and satisfied out of his property elsewhere. Again, if the paper should be innocently purchased by one who resides abroad, and who was indebted to the defendant, how could the defendant ever, under the law merchant, coerce payment from his debtor who holds his paper? The argument is fallacious, when the basis assumed is, that by this recovery, the defendant would be protected against the claim of an innocent holder. Should this be even correct, why should the innocent holder be defeated? Is it to enable the one who has been neglectful and the cause of the difficulty to prevail in preference to him? All these reasons shew that it is to a Court of Chancery that the plaintiffs should apply; there, care will be taken of the rights of all the parties, and the loss, if any, made to fall where the fault lies.

By JUDGE SAFFOLD. The declaration having been demurred to, all the material facts alleged therein are of course to be taken as true. But the plaintiff in error is not understood to rely on any defect in the manner or form of pleading. The objection is, that an action at law will not lie on an assignable lost note, especially if lost previous to its maturity; nor upon a note tranferable by delivery; or made payable to order, and indorsed in blank; because as is contended, in either case, the instrument may fall into the hands of a *bona fide* holder, who would thereby acquire an indefeasible interest, so as to be enabled to recover on it, notwithstanding the former holder may have received payment; and in this case, though it appears the note was made payable to Hunt and Norris, or order, it does not appear but that it may have been indorsed in blank.

In support of this position, reference has been made to Chitty on bills, [a] where it is said, that "in general no *a Page 152.* action at law can be supported against a party to a bill of exchange, note or check, indorsed in blank, so as to be transferable to a *bona fide* holder, and lost before or on the day it is due, although a bond of indemnity has been tendered to the defendant; and if the bill be transferable by delivery, it would seem, that if it were lost, even after it became due, and after action brought, the same rule prevails."

Again, it is held, where a bill or note has been lost before it is due, it is proper that the party should be confined

JULY 1880.

Chaudron
v.
Hunt and
Norris.

to a Court of Equity for relief; "for as a transfer before a bill is due, though made by a person not entitled thereto, may give a *bona fide* holder a right of action thereon; it is but right that the party called upon to pay, should be previously sufficiently indemnified; and the sufficiency of the indemnity can be more correctly ascertained in a Court of Equity than of law. But where a bill has been lost after it became due, and that fact be clearly proved, there seems to be no reason why the party who lost it should not be permitted to proceed at law; and indeed without offering an indemnity, inasmuch as the law itself, *a* Chitty on would in such case indemnify all the parties." *a* In the bills 157. case of *Bevan Widow v. Hill*, *b* a recovery at law on a lost check was denied, on the ground of the supposed necessity for an indemnity against the check, which Chancery alone was competent to afford. The same doctrine was held in relation to a bill of exchange which had been lost, after being indorsed by the payee, in the case of *Pierson* *c* 2 Camp. R *v. Hutchinson.* *c* Yet all the cases referred to admit that where it appears the instrument had been destroyed, or was not negotiable, or has not been negotiated, or that it was only specially indorsed, the party who lost it may proceed by action at law, and secondary evidence of the contents may be admitted.

The only objection urged against a recovery in this case, either on principle or authority, is, that the instrument was assignable, and may have been assigned; that it may be in the hands of a *bona fide* holder, and even that a recovery may already have been had on it, by proceedings in attachment in another State against the defendant's property. Under the force of a statute of this State, this latter ground only is mainly relied on. The act alluded to, is *d*Laws of Ala. that of 1812, *d* which provides that all bonds, bills, notes, &c., may be assigned by indorsement; and that in all actions to be commenced, and sued upon any such assigned instrument, the defendant shall be allowed the benefit of all payments, discounts and sets off, made, had or possessed against the same, previous to notice of the assignment &c., in the same manner as if the same had been sued and prosecuted by the obligee or payee therein.

This statue has the effect to remove much of the objection to the remedy at law, which was allowed to exist in the English Courts, where such instruments are purely negotiable, and the defendant was not allowed the benefit of payments, sets off or discounts, against a *bona fide* hold-

b 2 Camp. R. 381.

c 2 Camp. R 211.

d Laws of Ala. 69.

er, though made, had or possessed, previous to the notice of the transfer. This difference is admitted by the counsel for the plaintiff in error, but he contends that part of the objection still exists, unless it was clearly shewn that the note had not been indorsed in blank or otherwise transferred; as it is possible the amount may have been recovered by attachment in another State, of which the defendant has not yet been informed. This is an apprehension of danger too remote to be regarded by the law. It is extremely improbable that a recovery can be had elsewhere, and here also, on the same demand, before the defendant would obtain notice of both suits; and either recovery, by virtue of the statute referred to, would constitute a bar to the other. But even in England, the more correct doctrine appears to be, that it was only in cases upon negotiable paper which had been merely lost, and not destroyed, and which was either shewn or presumed to have been indorsed, or otherwise transferred, previous to the loss, that a recovery at law was not permitted. *a*    *a* 6 Vesey 812.

The statute of 1828 "regulating judicial proceedings," and which prescribes a mode of suing at law on lost bonds, bills, notes, &c., can have no influence on this decision, for the reason that it was passed subsequent to the commencement of the suit; moreover, it is conceived to be merely declaratory of the true principles of the common law, as far as it could apply to a case like the present, except in the requisition that the plaintiff shall make oath in writing of the loss of the instrument previous to instituting suit; and this is alleged to have been done on the present occasion.

In this case the idea of the note having been transferred, or indorsed in blank before the loss, is negatived as far as practicable. It is alleged and admitted to have been drawn payable to Hunt and Norris, or order, and they are the original plaintiffs. Then on the supposition that the note was lost by them, and that it remains lost or destroyed, as charged, it would be impossible to prove, negatively, that it had not been transferred or indorsed in blank; and, as contended by their counsel, it would have been unnecessary and improper to allege these facts unless susceptible of proof.

The most rational doctrine, and which is believed to prevail in the United States, is that which was recognised in the case of *Pintard v Tackington*,*b* that in an action on *b* 10 Johns. R. 104. a promissory note, alleged to have been lost or destroyed,

JULY 1830.

Chaudron
v.
Hunt and
Norris.

where its existence and contents were proved, and it did not appear that it was negotiable, or if negotiable that it had in fact been negotiated, the plaintiff was entitled to recover on the note at law.

By the unanimous opinion of the Court, let the judgment be affirmed.

Judgment affirmed.

LIPSCOMB, CHIEF JUSTICE, and JUDGE COLLIER, not sitting.

